Filed 12/6/21  P. v. Tawney CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| THE PEOPLE, | C090659 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF190300004A) |
| v. | |
| ANTHONY MICHAEL TAWNEY, | |
| Defendant and Appellant. | |

This case arises out of the severe beating of a man by defendant Anthony Tawney and his codefendant stepfather during a domestic dispute.  After a joint trial, a jury found defendant guilty of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)),[1] possession of a firearm by a felon (§ 29800, sub. (a)(1)), and

---

[1]  Undesignated statutory references are to the Penal Code.

1

possession of ammunition by a felon (§ 30305, subd. (a)(1)).[2] The jury also found true the allegation that he personally inflicted great bodily injury. (§ 12022.7, subd. (a).) The trial court sentenced him to an aggregate term of seven years in prison, and this timely appeal followed. The notice of appeal in this case was filed in October 2019. After numerous granted requests for extension of time to file the opening brief, the case was fully briefed in August 2021 and assigned to this panel that same month. The parties waived oral argument, and the case was submitted on October 29, 2021.

Defendant contends reversal is warranted due to the trial court's failure to suppress evidence seized during a warrantless automobile search, insufficient evidence, and evidentiary error. We reject these contentions and affirm the judgment.

## FACTUAL BACKGROUND

In February 2019, defendant's mother, Michelle Tawney-Wilson, and his stepfather, Brandon Wilson, lived in Yuba City.[3] On February 3, 2019, Michelle invited some people to her home (Wilson residence) for a Super Bowl party, including the victim, Richard Evers, III. Michelle knew Evers because she was a friend of his younger brother, who had died around 10 years earlier.

Brandon and Michelle drove Evers home around 10:00 p.m. Thereafter, Michelle went to a bar by herself. At approximately 3:30 a.m. on February 4, she went to Evers' residence. According to Evers, Michelle came over to talk about his deceased brother.

At approximately 4:00 a.m., Brandon and defendant knocked on Evers' front door. Evers was shirtless when he opened the door; Brandon demanded to know if Michelle was inside and began arguing with Evers, which woke up Evers' roommate, Gerald Lujan. During the argument, Brandon searched the house for Michelle. When he noticed

---

[2] The jury found defendant not guilty of assault with a deadly weapon, a firearm. (§ 245, subd. (b).)

[3] To avoid any confusion, we refer to Brandon and Michelle by their first names.

2

that the bathroom door was locked, he pounded on it and said, "I know you're in there." Shortly thereafter, Michelle emerged from the bathroom. Brandon yelled and screamed at her; he said he wanted a divorce and called her a "bitch" and a "whore." According to Lujan, Evers had a "crappy shit eatin' grin" on his face when Michelle came out of the bathroom.

As Brandon and Michelle were arguing, Lujan noticed that defendant was "beating [Evers] up." Evers was on the ground and defendant was punching him. Brandon ran toward Evers and joined the attack. Both Brandon and defendant repeatedly punched Evers. Brandon also kicked Evers in the head and back. Evers, a much smaller man, did not fight back.

During the attack, Lujan saw a black semiautomatic handgun on the floor near Brandon's legs. According to Lujan, Brandon picked the gun up and told defendant, "[Y]our gun fell out."

When Lujan said that he was calling the police, Brandon and defendant fled the area. Police officers were dispatched to the scene at 4:33 a.m. Inside the residence, there was a significant amount of blood, including a large puddle where the attack occurred. Evers, who was covered in blood, was taken to the hospital by ambulance.

Evers sustained numerous injuries from the attack, including broken and loose teeth, a broken nose, a broken upper jaw, and a broken eye socket. In total, Evers suffered 11 bone fractures. At the time of trial, he had missing teeth and was unable to see out of one of his eyes.

At approximately 1:32 p.m. the next day, defendant was stopped by police officers for traffic violations shortly after he drove away from the Wilson residence. He was arrested and placed on the curb or in the backseat of a patrol vehicle. Thereafter, a warrantless search of the car revealed a loaded, black semiautomatic handgun inside a blue bag, which was located on the front passenger-seat floorboard. Defendant was alone

3

in the car, which was not registered to him. His right hand was swollen and was cut in a manner consistent with a fistfight.

**DISCUSSION**

I

*Motion to Suppress*

Defendant contends reversal is required due to the trial court's failure to suppress the evidence seized during the warrantless automobile search. He argues the trial court erred in determining the search was justified under the search incident to arrest exception to the Fourth Amendment's warrant requirement. We disagree.

A. *Additional Background*

Defendant filed a pretrial motion seeking to suppress the loaded handgun seized during the warrantless automobile search pursuant to section 1538.5. The prosecution filed a written opposition. Among other things, the prosecution argued that the search was valid because the gun was seized during a lawful search incident to arrest.

At the hearing on the motion, Detective Charles Taylor Green, Jr., from the Sutter County Sheriff's Department testified that on February 5, 2019, he and his partner were conducting surveillance on the Wilson residence when they observed an individual get into a car and drive away. At that time, Green was aware that defendant had assaulted someone 24 to 36 hours earlier, he had a handgun during the assault, the gun was potentially used in the assault, and defendant remained in possession of the gun after the assault.

Detective Green and his partner followed the car for a short distance and then conducted a traffic stop after observing two traffic violations. After defendant produced an identification card but not a driver's license, Green instructed him to get out of the car. When asked whether he was armed, defendant said that a box cutter was in his right front pocket.

4

Detective Green handcuffed defendant, removed the box cutter from his pocket, and arrested him for "the 245 and some other charges added." Green requested a tow-truck and then searched the car.**4** During the search, he found a black handgun inside a blue gym bag, which was located on the front passenger-side floorboard. At the time of the search, defendant was handcuffed and sitting on the curb or in the backseat of a patrol vehicle. He was the only person in the car, which was not registered to him.

After hearing argument from counsel, the trial court denied the motion to suppress. The court ruled the search was justified under the search incident to arrest exception to the Fourth Amendment's warrant requirement. The court added that the search was "potentially or legitimately a search for probable cause."

B. *Applicable Legal Principles and Standard of Review*

The Fourth Amendment guarantees the right to be free of unreasonable searches and seizures by law enforcement personnel. (U.S. Const., 4th Amend.; *People v. Diaz* (2011) 51 Cal.4th 84, 90, overruled on other grounds in *Riley v. California* (2014) 573 U.S. 373, 403.) "The remedy for a violation of the Fourth Amendment is to render inadmissible any evidence seized during the illegal search." (*People v. Downey* (2011) 198 Cal.App.4th 652, 657.)

Under section 1538.5, a defendant may move to suppress evidence obtained during an unreasonable warrantless search. (§ 1538.5, subd. (a)(1)(A).) The prosecution bears the burden of showing that a warrantless search was lawful. (*People v. Johnson* (2006) 38 Cal.4th 717, 733; see also *People v. Macabeo* (2016) 1 Cal.5th 1206, 1213.)

---

**4** Detective Green described the automobile search as an inventory search, explaining that he searched the car "incident to arrest" to document whether there was anything of "high value" inside. The prosecution, however, did not argue in the trial court, and the Attorney General does not assert on appeal, that the search was a valid inventory search. Therefore we do not discuss it further.

We review issues relating to the suppression of evidence derived from police searches and seizures under federal constitutional standards. (*People v. Schmitz* (2012) 55 Cal.4th 909, 916; *People v. Bradford* (1997) 15 Cal.4th 1229, 1291.) Warrantless searches are presumed to be unreasonable, subject only to a few specifically established and well-delineated exceptions. (*People v. Diaz*, *supra*, 51 Cal.4th at p. 90, citing *Katz v. United States* (1967) 389 U.S. 347, 357.) "One of the specifically established exceptions to the Fourth Amendment's warrant requirement is 'a search incident to a lawful arrest.' " (*Diaz*, at p. 90, citing *United States v. Robinson* (1973) 414 U.S. 218, 224.)

Police officers may search a vehicle incident to an occupant's arrest in two circumstances: (1) when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search, or (2) when there is reason to believe evidence relevant to the crime of arrest might be found in the vehicle. (*Arizona v. Gant* (2009) 556 U.S. 332, 343 (*Gant*).) Under *Gant*, "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' [Citation.] In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. [Citations.] But in others . . . the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." (*Id*. at pp. 343-344.)

" 'In reviewing a suppression ruling, "we defer to the superior court's express and implied factual findings if they are supported by substantial evidence, [but] we exercise our independent judgment in determining the legality of a search on the facts so found." ' [Citation.] [¶] Thus, while we ultimately exercise our independent judgment to determine the constitutional propriety of a search or seizure, we do so within the context of historical facts determined by the trial court." (*People v. Tully* (2012) 54 Cal.4th 952, 979.)

C. *Analysis*

We conclude the warrantless automobile search was justified under the search incident to arrest exception to the Fourth Amendment's warrant requirement.

In *People v. Nottoli* (2011) 199 Cal.App.4th 531, the Sixth Appellate District considered the legality of the search of a car driven by a defendant who was arrested for being under the influence of a controlled substance, and for driving with an expired license. (*Id.* at p. 540.) The search revealed drug paraphernalia, a loaded firearm, and a cell phone that had a picture of the defendant posing with firearms. (*Id.* at pp. 540-541.) In finding the search lawful as incident to an arrest, the court relied on *Gant*, which "explicitly held that a vehicular search incident to arrest is valid when 'it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle[]' [citation] or when 'it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." ' " (*Nottoli*, at p. 551, fn. omitted.)

Here, when the car was searched, defendant did not have access to the passenger compartment, as he was detained. However, the car and blue bag found inside were properly searched incident to his arrest because it was reasonable for Detective Green to believe that evidence relevant to the crime of arrest might be found in the car. (*People v. Nottoli, supra*, 199 Cal.App.4th at p. 551; *Gant, supra*, 556 U.S. at pp. 343-344.) At the time of the search, defendant had just been arrested for assault, and Green was aware that defendant possessed and potentially used a handgun during the very recent assault for which he had just been arrested. Under these circumstances, it was reasonable for Green to believe the car defendant was driving might contain the handgun or other evidence relevant to the assault, such as bloody clothes. Accordingly, we find no Fourth Amendment violation.[5]

---

[5] In his reply brief, defendant conflates the two circumstances described by *Gant* to argue that regardless of the likelihood that evidence of the crime of arrest would be

## II

### *Sufficiency of the Evidence*

Defendant contends reversal is required because there was insufficient evidence presented to establish that he knowingly possessed the loaded handgun found during the warrantless automobile search. We disagree.

A. *Applicable Legal Principles and Standard of Review*

The firearm and ammunition possession offenses charged in this case "prohibit a felon from 'possess[ing]' or having 'under [his] custody or control' the given item [citations], and they are general-intent crimes that require knowing possession of the prohibited item." (*People v. Bay* (2019) 40 Cal.App.5th 126, 131-132; see CALCRIM No. 2511 [possession of firearm]; CALCRIM No. 2591 [possession of ammunition].) Knowledge can be proved by circumstantial evidence and any reasonable inferences drawn from that evidence. (*People v. Meza* (1995) 38 Cal.App.4th 1741, 1745-1746.)

"Possession may be actual or constructive. ' "A defendant has actual possession when the weapon is in his . . . immediate possession or control," ' i.e., when he . . . is actually holding or touching it. [Citations.] 'To establish constructive possession, the prosecution must prove a defendant knowingly exercised a right to control the prohibited item, either directly or through another person.' [Citations.] Although a defendant may share possession with other people, 'mere proximity' or opportunity to access the contraband, 'standing alone, is not sufficient evidence of possession.' " (*People v. Bay, supra,* 40 Cal.App.5th at p. 132.)

---

located in the car, some exigency or danger to the officers was still required in this situation. But as *Gant* itself makes clear, this characterization is inaccurate. "*Neither* the possibility of access *nor* the likelihood of discovering offense-related evidence authorized the search in this case. . . . Gant clearly was not within reaching distance of his car at the time of the search. *An evidentiary basis for the search was also lacking in this case. . . .* Gant was arrested for driving with a suspended license—an offense for which *police could not expect to find evidence* in the passenger compartment of Gant's car." (*Gant, supra*, 556 U.S. at p. 344, italics added.)

Dominion and control may be inferred when the prohibited item is discovered in a place over which the defendant has general dominion and control, such as his residence, automobile, or personal effects. (*People v. Jenkins* (1979) 91 Cal.App.3d 579, 584). Dominion and control may also be inferred when the prohibited item is immediately accessible. (*People v. Miranda* (2011) 192 Cal.App.4th 398, 410.)

" 'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Steele* (2002) 27 Cal.4th 1230, 1249.) "We draw all reasonable inferences in favor of the judgment." (*People v. Cardenas* (2020) 53 Cal.App.5th 102, 119, fn. 11.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) We reverse for lack of substantial evidence only if " 'upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

B. *Analysis*

Viewing the record in the light most favorable to the judgment, we conclude there was substantial evidence from which a reasonable jury could have concluded that defendant knowingly possessed the firearm and ammunition found during the search of the car. The firearm was found in the car defendant was driving on the day after the assault; it was inside a blue bag located on the front passenger-side floorboard. Given the location of the gun and the evidence that defendant was alone in the car and possessed a similar gun during the assault, the jury could have reasonably inferred the gun belonged to him. Although defendant was not the registered owner of the car, there was no

9

evidence that any other person had recently driven the car or that the blue bag belonged to someone else. There was sufficient evidence to support the convictions.[6]

III

*Alleged Evidentiary Error*

Defendant contends the trial court prejudicially erred in allowing the prosecution to introduce testimony from Lujan that, during the assault, Brandon told defendant: "Your gun fell out." Defendant argues the admission of this evidence violated the *Aranda-Bruton*[7] rule and his Sixth Amendment right to confrontation, which, as we explain below, prohibit the admission of testimonial statements made by a non-testifying defendant that incriminate a codefendant. (See *People v. Washington* (2017) 15 Cal.App.5th 19, 26-28 (*Washington*).) Defendant additionally contends that Brandon's statement regarding the handgun was inadmissible hearsay and should not have been admitted. We disagree.

A. *Additional Background*

Immediately before Lujan testified, the prosecutor learned for the first time that, during the assault, Lujan heard Brandon tell defendant that his gun fell. Over defense objection pursuant to the *Aranda-Bruton* rule, the trial court admitted Lujan's testimony under the spontaneous declaration exception to the hearsay rule. The court stated: "[T]he *Aranda-Bruton* rule does not apply to statements that are admissible under hearsay exceptions. A spontaneous statement is a hearsay exception that survives any *Crawford*[8] issue. Therefore, it's admissible . . . ."

---

[6] The parties stipulated defendant was a felon at the time of the search.

[7] *People v. Aranda* (1965) 63 Cal.2d 518, partially abrogated by constitutional amendment as stated in *People v. Fletcher* (1996) 13 Cal.4th 451, 465 (*Fletcher*); *Bruton v. United States* (1968) 391 U.S. 123.

[8] *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*).

10

B. *Applicable Legal Principles*

The confrontation clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  (U.S. Const., 6th Amend.)  "The right of confrontation includes the right of cross-examination."  (*Fletcher*, *supra*, 13 Cal.4th at p. 455.)

In *Bruton*, the United States Supreme Court held that the admission of a non-testifying codefendant's confession implicating the defendant violates the confrontation clause's guarantee of the right to cross-examination even if the jury is instructed to disregard the confession as to the defendant.  (*Bruton v. United States, supra*, 391 U.S. at pp. 127-128.)  The *Aranda* court reached a similar conclusion on non-constitutional grounds.  (*People v. Aranda, supra*, 63 Cal.2d at pp. 528-531; see also *Fletcher, supra,* 13 Cal.4th at p. 455.)

However, nearly 40 years after *Aranda* and *Bruton* were decided, the United States Supreme Court held that the confrontation clause only prohibits the admission of testimonial hearsay statements.  (*Crawford, supra,* 541 U.S. at pp. 59, 68-69; see *Whorton v. Bockting* (2007) 549 U.S. 406, 420 [confrontation clause has no application to out-of-court nontestimonial statements]; *People v. Gutierrez* (2009) 45 Cal.4th 789, 812 ["[o]nly the admission of testimonial hearsay statements violates the confrontation clause"].)  "Nontestimonial hearsay is subject only to 'traditional limitations upon hearsay evidence' and does not implicate the Sixth Amendment right of confrontation." (*People v. Arauz* (2012) 210 Cal.App.4th 1394, 1401-1402; see also *People v. Arceo* (2011) 195 Cal.App.4th 556, 575.)

In *Crawford*, the United States Supreme Court did not explicitly define "testimonial statements." (*Crawford, supra*, 541 U.S. at p. 51.)  Instead, it described testimonial hearsay as " '*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or . . . 'statements that were made under circumstances

11

which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " (*Crawford, supra*, 541 U.S. at pp. 51-52.) The court also noted that "[s]tatements taken by police officers in the course of interrogations are . . . testimonial under even a narrow standard." (*Id*. at p. 52.) In order to be "testimonial" under *Crawford*, a statement must have been "given and taken *primarily* for the *purpose* [of] . . . establish[ing] or prov[ing] some past fact for possible use in a criminal trial." (*People v. Cage* (2007) 40 Cal.4th 965, 984; see also *Washington, supra,* 15 Cal.App.5th at p. 28.)

C. *Analysis*

We conclude that defendant's *Aranda/Bruton* argument fails because Brandon's statement regarding the handgun was nontestimonial. Under *Crawford*, the rule announced in those cases only applies to testimonial hearsay statements. (*People v. Cortez* (2016) 63 Cal.4th 101, 129 [rejecting *Bruton* argument because, among other things, " 'the confrontation clause applies *only to testimonial hearsay statements* and not to [hearsay] statements that are nontestimonial' "]; see also *Washington, supra,* 15 Cal.App.5th at p. 28.)

Here, because the challenged hearsay statement was nontestimonial, it was admissible if an exception to the hearsay rule applied. (*People v. Arauz*, *supra*, 210 Cal.App.4th at pp. 1401-1402.) The trial court found that the spontaneous statement exception applied. (See Evid. Code, § 1240.)[9] Defendant did not object in the trial court on the ground that this exception did *not* apply. On appeal, he argues for the first time that the challenged statement was "classic hearsay and inadmissible because *it was*

---

[9] Evidence Code section 1240 provides: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception."

*introduced solely for the truth of the matter asserted* -- that [defendant] possessed a gun."

Even were we to overlook forfeiture,[10] we would find no merit in defendant's argument.

A spontaneous statement is admissible for the truth of the matter asserted. (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1266.) The hearsay statement at issue here clearly qualified as a spontaneous statement.[11]

## DISPOSITION

The judgment is affirmed.


_____/s/_____
Duarte, J.

We concur:


_____/s/_____
Blease, Acting P. J.


_____/s/_____
Hoch, J.

---

[10] It is well established that "trial counsel's failure to object to claimed evidentiary error on the same ground asserted on appeal results in a forfeiture of the issue on appeal." (*People v. Dykes* (2009) 46 Cal.4th 731, 756.)

[11] In view of our conclusions, we need not and do not address any of the other arguments made by the parties.